IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER L. K.,[1] | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Civil No. 3:20-cv-00234-GCS[2] |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.

PROCEDURAL HISTORY

Plaintiff applied for benefits in April 2018, alleging disability beginning on March 16, 2017. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application in August 2019. (Tr. 18-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1]   In keeping with the court's usual practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]   This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 11).

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The ALJ's finding that Plaintiff is capable of frequent bilateral handling and fingering is not supported by the medical evidence.

2. The ALJ failed to give specific reasons for discounting Plaintiff's subjective allegations.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. She is insured for DIB through September 30, 2022.

The ALJ found that Plaintiff had severe impairments of lumbar degenerative disc disease; status-post L1-T12 laminectomy and decompression and resection of a spinal tumor in July 2015; cervical degenerative disc disease with C5-6 stenosis; and obesity. At step two, he also determined that arthritis in Plaintiff's thumbs, which was treated surgically, was a non-severe impairment because it had only a minimal effect on her ability to perform basic work activities.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with physical limitations. Relevant to Plaintiff's arguments for remand, the ALJ found that she was limited to frequent handling and fingering bilaterally.[4]

Based on the testimony of a vocational expert, the ALJ found that Plaintiff was able to do her past relevant work as an eyeware salesperson.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. This summary of the record discusses only the evidence relevant to Plaintiff's arguments.

---

[4] Handling is "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands" and fingering is "picking, pinching, or otherwise working primarily with the fingers." SSR 85-15, 1985 WL 56857, at *2, 7. Frequent means "occurring from one-third to two-thirds" of the workday. SSR 83-10, 1983 WL 31251, *5-6.

1.      **Agency Forms**

Plaintiff was born in 1963 and was 56 years old on the date of the ALJ's decision. (Tr. 223).

2.      **Evidentiary Hearing**

Plaintiff was represented by a "non-attorney" at the evidentiary hearing in August 2019. (Tr. 43, 128).

Plaintiff's last job was at an optometry office. She sold glasses. She fitted people for frames, taught people how to insert and remove contact lenses, ordered frames, answered the phone, and used the computer. (Tr. 45-47).

Plaintiff strained both thumbs when she fell on ice in 2013. Sometime later, Dr. Morgan did an "anchovy procedure" on her left thumb.[5] It took about six months to heal and "it was okay." Dr. Morgan later did the same procedure on her right thumb. Plaintiff testified that her right thumb "operates" but her index finger does not. She stated the following: "a pin broke there and started coming out the top of my hand. And now I can't push, it won't go down like normal fingers. It's stuck. So, we're working on that." (Tr. 52).

Plaintiff's right hand is her dominant hand. She testified that she could not grasp things. She dropped things. She could not curve her hand to pick up a glass. (Tr. 52-53). The surgery on her right thumb occurred about three months before the hearing. (Tr. 55).

A vocational expert ("VE") testified that Plaintiff's past work at the optometry

---

[5]     "LRTI surgery [anchovy procedure] removes a small bone (trapezium) at the base of the thumb, and rearranges a nearby tendon to serve as a cushion for the arthritic thumb joint. A portion of the damaged ligament is also removed and replaced with a piece of your wrist flexor tendon." https://www.healthline.com/health/lrti-surgery#candidates, visited on September 8, 2020.

office was categorized as eyewear sales and was semi-skilled and light. She testified that a person with the RFC assessment determined by the ALJ could do that job. However, if she were limited to occasional rather than frequent handling and fingering, she could not do her past work. (Tr. 67-68). Plaintiff did not have transferrable skills from her past work in eyewear sales. (Tr. 70).

### 3. Medical Records

Dr. Morgan of the Orthopedic Institute of Southern Illinois treated Plaintiff's thumb problems. The administrative record contains records from that office from 2019. (Tr. 581–586). Partial records from 2017 are in the primary care provider's records because Dr. Morgan's office sent copies of some records to the primary care provider. The earlier records are located at Tr. 521-532.

In September 2017, Dr. Morgan did a surgical procedure to relieve triggering of the right thumb. At a follow up visit, he addressed pain in her left thumb. He diagnosed primary osteoarthritis of the first carpometacarpal joint of the left hand. He performed LRTI (ligament reconstruction and tendon interposition) surgery in October 2017. At a follow-up visit, she was having a lot of pain. The impression was "doing well." She was placed in a splint and was to return in three weeks for pin removal. (Tr. 521-526). There are no further records from 2017 or 2018.

Plaintiff saw Dr. Morgan for right hand pain in April 2019. The office notes state that she had been seen for pin removal after a left anchovy procedure in November 2017. (Tr. 581). The diagnosis was basilar thumb arthritis of the right hand. (Tr. 584).

Dr. Morgan performed an anchovy procedure on the right thumb on May 8, 2019.

(Tr. 586). The operative note is the last record from Dr. Morgan's office; there are no records of follow-up visits.

    **4.**    **State Agency Consultants' Physical RFC Assessment**

State agency consultants assessed Plaintiff's RFC based on a review of the record in August and October 2018. Neither found any manipulative limitations. (Tr. 79-81, 107-109).

## ANALYSIS

Plaintiff was 56 years old when the ALJ denied her application, which puts her in the "advanced age" category. 20 C.F.R. § 404.1563(e). Unless she can do her past work, a person in the advanced age category with no transferrable skills who is limited to light work is deemed disabled under the Medical-Vocational Guidelines ("Grids"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2. According to the VE's testimony, if Plaintiff is limited to only occasional handling and fingering, she cannot do her past work. Therefore, the issue of how much handling and fingering she can do in a workday is critical.

Despite the importance of the issue, the ALJ gave it short shrift. As Plaintiff argues, there was not substantial evidence to support the ALJ's conclusion that she was capable of frequent handling and fingering.

To begin with, it is obvious that Dr. Morgan's records are incomplete. The last note from his office is the operative note from the May 2019 surgery on the right thumb. An ALJ has a duty to develop a full and fair record, and this duty is enhanced when the clamant is not represented by counsel; in that circumstance, "the ALJ must 'scrupulously

and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)(citing *Thompson v. Sullivan*, 933 F.2d 581, 585-586 (7th Cir. 1991)). Plaintiff was not represented by an attorney at the administrative level; her representative was a "non-attorney." *See* Appointment of Representative, Tr. 128. Defendant's statement to the contrary (Doc. 23, p. 13) is incorrect.

The state agency consultants reviewed the record long before the right thumb surgery, so their opinions cannot provide substantial support for the ALJ's conclusion that Plaintiff could frequently handle and finger. There were no records at all from which the ALJ could have evaluated the success of that surgery. There was certainly no medical evidence from which the ALJ could have concluded, as he did, that her right thumb arthritis had no more than minimal effect on her ability to perform basic work activities and "required little to no ongoing treatment other than medication management." (Tr. 21). Further, even if her hand impairment was considered to be non-severe, the ALJ was required to consider the effects of all impairments, severe and non-severe, as he himself recognized at Tr. 20. "When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018).

The ALJ apparently ignored Plaintiff's testimony that her right index finger does not work. She said "a pin broke there and started coming out the top of my hand. And now I can't push, it won't go down like normal fingers. It's stuck. So, we're working on

that." (Tr. 52). Her testimony identified a specific functional limitation and indicated that treatment was ongoing at the time of the hearing. However, the ALJ did not ask any follow-up questions.

Plaintiff is also correct that the ALJ's evaluation of her statements concerning the intensity, persistence, and limiting effects of her symptoms was in error. The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005).

Here, of course, the ALJ ignored Plaintiff's testimony about her ongoing right-hand problems. And, because there were no records from Dr. Morgan after the operative note, the ALJ could not have concluded that her testimony was contradicted by the medical records. The ALJ said that Plaintiff's daily activities "seem inconsistent" with her alleged limitations, but he cited forms she submitted in May and September 2018, long before her right thumb surgery. (Tr. 28). He also ignored what she said about her activities. Her "meal preparation" was mostly reheating frozen food once or twice a week. She put clothes in the washing machine, but she needed help getting clothes out of the dryer. Her son did a lot of the housework. She rarely went to the store. Her son did

most of the shopping. (Tr. 282-283). The ALJ also said she was "able to provide care for her son." (Tr. 28). It is unclear what he meant by that, since her son was 17 years old at the time of the hearing. (Tr. 61).

Because the ALJ failed to give specific reasons grounded in the evidence for his credibility determination, it was erroneous.

The ALJ's errors require remand. "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation and quotation marks omitted).

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: September 22, 2020.**

Digitally signed by Judge Sison 2
Date: 2020.09.22 16:09:33 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**